IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRYL CARTER, :
:
    Plaintiff, : CIVIL NO. 4:CV-09-0639
:
v. : (Judge Jones)
:
WARDEN B.A. BLEDSOE, :
:
    Defendant. :

## **MEMORANDUM**

May 30, 2009

Plaintiff Darryl Carter ("Plaintiff" or "Carter"), an inmate presently confined at the United States Penitentiary at Allenwood ("USP Allenwood") in White Deer, Pennsylvania, filed this *pro se* action raising claims under *Bivens*[1] and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (Doc. 1). He also has filed a Motion for leave to proceed *in forma pauperis*. (Doc. 4).

Based on the request to proceed *in forma pauperis*, the complaint is before the Court for screening pursuant to 28 U.S.C. § 1915. For the reasons set forth below, Plaintiff's *Bivens* claims will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and his FTCA claims will

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

be dismissed for lack of subject matter jurisdiction.

I. **ALLEGATIONS OF THE COMPLAINT**

In his Complaint, filed on April 8, 2009, Carter names B.A. Bledsoe, Warden of the United States Penitentiary at Lewisburg ("USP Lewisburg") as Defendant.[2] The following is a summary of the allegations in the Complaint and of the attachments to the Complaint:

Carter arrived at USP Lewisburg on October 18, 2007 following his transfer from another institution. (Doc. 1 at 3 § IV). Prior to his arrival, he purchased a Sony walkman and Koss R-10 headphones from the commissary.[3] (*Id.* at 4). On December 3, 2007, he received his personal property, including his Sony walkman and Koss R-10 headphones.[4] (*Id.*).

---

[2] Warden Bledsoe is the sole Defendant named in the caption of the Complaint. However, in the section of the Complaint entitled "Parties," Plaintiff also names as Defendants "Lt. Ms. Heath; SIS Mr. Kissell; SIS Mr. D. Reese; Property Officer Mr. Stogart; Investigation Mr. Johnson." While Plaintiff does not state the positions and places of employment of these Defendants, it is apparent from the allegations in his Complaint and his attachments that they were employed at USP Lewisburg during the relevant time period.

[3] Attached to the Complaint as Exhibit B are copies of sales invoices showing that Carter paid $44.85 for a Sony radio on February 14, 2005 and $31.15 for Koss R-10 headphones on January 3, 2005. (*See* Doc. 1-2 at 5).

[4] Attached to the Complaint as Exhibit A is Carter's Inmate Personal Property Record dated December 3, 2007. In the section titled "a. Personally Owned Items," it is noted that Carter had one radio. (*See* Doc. 1-2 at 3). In the section titled "c. Hobbycrafts," it is noted that Carter had one Koss head set. (*See id.*).

2

On May 19, 2008, while he was an inmate at USP Lewisburg, Carter was placed in lock-up by Lieutenant Heath. "They" took Carter's Sony walkman, R-10 headphones, and his address book and walked him to the SHU (Special Housing Unit). (*Id.*).

On May 29, 2008, Carter and Property Officer Stogart reviewed Carter's property, and items were missing. (Doc. 1-2 at 1). Stogart advised Carter not to sign and stated that he would call the Lieutenant Office to find out who had the items. (*Id.*). Upon his release from the SHU on June 24, 2008, Carter signed for the property that was in the property bin, but the walkman and R-10 headphones were not there. (*Id.*).

On May 29, 2008, Carter filed a "cop-out" (Inmate Request to Staff) directed to the Unit Team. (Doc. 1 at 4). In his May 29, 2008 request, attached to the Complaint as Exhibit 1, Carter asks for a BP-8 complaint form and states that he is filing a complaint against Lieutenant Heath for holding his walkman, headphones, and phone book "vindictively." (*See* Doc. 1-2 at 6).

On May 31, 2008, Carter "tried to resolve this matter" by filing a second Inmate Request to Staff in which he states that his complaint can be withdrawn if his items are returned to him. (*See* Doc. 1 at 4; Doc. 1-2 at 7). On June 4, 2008, he filed

3

a third Inmate Request to Staff directed to the Unit Manager in which he states that he is trying to resolve the matter informally before he files grievance forms and that Lieutenant Heath was holding his walkman, headphones, and address book. (*See* Doc. 1 at 4; Doc. 1-2 at 8). The Unit Manager's response on the disposition section of the form states that the property referenced in the request had been delivered to the Property Officer in the SHU on May 22, 2008 and that Carter should request it from the SHU Property Officer. (*See* Doc. 1-2 at 8).

On June 16, 2008, Carter filed a BP-9 form stating that members of the USP Lewisburg staff, namely Heath, Mr. Reese, and Stogart, were either holding his walkman, headphones and address book or had intentionally lost them. (Doc. 1 at 4; Doc. 1-2 at 9). On June 24, 2008, Carter wrote to the Warden. In the letter, attached as Exhibit 5, he states that Heath, Stogart, Mr. D. Reese, and Mr. Reese admitted that his property was missing or lost. (*See* Doc. 1-2 at 10). Carter then states that someone lost his property intentionally or is holding it vindictively and requests that he receive his property back or receive a new walkman and headset or that the money be restored to his account. (*See id.*).

On June 30, 2008, Carter filed a BP-9 form about staff misconduct. (Doc. 1 at 4). In the form, which is part of Exhibit 6, Carter states that Lieutenant Heath

4

violated the standard of employee conduct by taking Carter's property vindictively, abusing her authority, being biased and unprofessional, and harassing him by keeping him in lock-up for no reason. (*See* Doc. 1-2 at 13).

On August 8, 2008, Carter sent memoranda to Mr. Kisell and Mr. D. Reese. (Doc. 1 at 4; Doc. 1-2 at 15-16). In his memorandum to Mr. Kissell, Carter states that, on June 24, 2008, he spoke to Kissell about his walkman and headphones being taken on May 18, 2008 by staff and being held in the SIS property room. (*See* Doc. 1-2 at 15). He then states that, on June 26, 2008, when Carter spoke to Kissell inside the SHU, Kissell stated that he found the walkman and headphones, but Carter asked him to hold onto them until he was released from the SHU. (*See id.*). However, at the end of the memorandum, Carter requests his property back. (*See id.*).

In the memorandum to D. Reese, Carter states that, on July 14, 2008, he spoke to him about the withdrawal of his tort claim regarding his walkman, headphones, and address book.[5] (*See id.* at 16). He also states that D. Reese gave him his address book, but not his walkman and headphones, and that they agreed that D. Reese would either give back the walkman and headphones or buy him new ones from the

---

[5] A copy of a Tort Claim Withdrawal dated July 14, 2008 and signed by Carter and a staff witness is included within Exhibit 6. (*See* Doc. 1-2 at 12). A handwritten notation on the form states that the withdrawal was of a BP-9 rather than a tort claim. (*See id.*).

5

commissary. (*See id.*). Finally, Carter notes that, even though he told D. Reese he would deal with the matter when he was released from the SHU, he wants his property back now. (*See id.*).

On an unspecified date, Carter filed a BP-11 form with the Bureau of Prisons ("BOP") Central Office. (Doc. 1 at 4; Doc. 1-2 at 17). In the form, Carter states that Heath took his Sony radio, headphones and address book when Carter was placed in lock-up on May 19, 2008. (*See* Doc. 1-2 at 17). He then states that on May 29, 2008, the property officer brought Carter his property but did not have the radio, headphones, or address book. (*See id.*). He alleges that the property officer stated that he called the Lieutenant office and spoke with Heath, who told the property officer that she did not know where the property was. (*See id.*). Carter then states, "Now they are starting to lose my personel [*sic*] property. 'What's next'." (*See id.*) Carter then refers to charges against him stemming from a March 14, 2008 incident report that were dropped by the hearing officer because it was demonstrated that staff lied and presented conflicting evidence. (*See id.*).

Carter alleges in his Complaint that Mr. Johnson was the tort claim investigation officer. (Doc. 1 at 4). Carter alleges that he spoke to Johnson on August 10 and August 16, 2008, and Johnson stated that he would recommend that

6

$75.00 be placed in Carter's account. (*Id.*; Doc. 1-2 at 1, 18). Attached to the Complaint as Exhibit 10 is a January 12, 2009 letter from the BOP Northeast Regional Office denying Carter's administrative tort claim. (Doc. 1-2 at 1, 2). The letter refers to Carter's administrative tort claim submitted on July 16, 2008 seeking compensatory damages in the amount of $29.45 for an alleged personal property loss (sweatshirt, earplugs, towel, gloves) after he was placed in the SHU at USP Lewisburg on May 19, 2008. (*See* Doc. 1-2 at 2).

As relief in this action, Carter requests that Warden Bledsoe put $75.00 into his account or buy him a walkman and R-10 headphones from the commissary. (Doc. 1 at 4). He also requests a jury trial. (*Id.*).

## II. DISCUSSION

### A. *Bivens* Claims

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed *in forma pauperis* if the court determines that the complaint "fails to state a claim on which relief may be granted." In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the plaintiff's allegations. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

7

*Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (citation omitted). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

*Pro se* pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

To state a *Bivens* claim, a plaintiff must allege (1) a constitutional deprivation caused by the exercise of some right or privilege created by the federal government,

and (2) the party responsible for the action must be fairly considered a federal actor. *See McCauley v. Computer Aid, Inc.*, 447 F. Supp. 2d 469, 473 (E.D. Pa. 2006) (citations omitted). Carter fails to meet these requirements. He alleges that Lieutenant Heath and/or other members of the USP Lewisburg staff either vindictively withheld his walkman and headphones or lost these items.[6] Yet, he does not identify the constitutional right that allegedly was violated. The Court construes Carter's claim as a claim that he was deprived of his property without due process of law.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), an inmate claimed that prison officials had negligently deprived him of his property without due process of law. The *Parratt* Court held that the alleged loss constituted a deprivation of property under the Fourteenth Amendment's due process clause. *Id.* at 536-37. Nevertheless, the Court also held that negligent deprivations by state officials of a prisoner's personal property are not actionable under the due process clause where a remedy exists under state law for reimbursement. *Id.* at 541-43.

Subsequently, in *Hudson v. Palmer*, 468 U.S. 517 (1984), the Court held that, regardless of whether a government employee intentionally or negligently deprived

---

[6] Inasmuch as Carter states in his Complaint that he retrieved his address book, he does not appear to be asserting a claim with regard to that item in this action. (*See* Doc. 1 at 2 § II C. 2).

9

an inmate of his or her property, the deprivation does not violate the due process clause as long as the inmate has adequate post-deprivation remedies available under state law. *Id.* at 533.

In *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986), the Court overruled the holding in *Parratt* that a mere lack of due care by a state official may deprive an individual of property under the Fourteenth Amendment. *Id.* at 330-31. The *Daniels* Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328.

In a recent case, the Third Circuit Court of Appeals invoked the holding in *Hudson* in determining that the District Court properly found that a state inmate had failed to state a procedural due process claim where he was provided with a meaningful post-deprivation remedy regarding the loss of his property through the state prison system's internal grievance procedure. *Mattis v. Dohman*, 260 Fed. Appx. 458, 461 (3d Cir. 2008) (citing *Hudson* 468 U.S. at 533).

In this case, to the extent that Carter's claim is that USP Lewisburg staff negligently lost his walkman and headphones, there has been no deprivation of property under the due process clause. *See Daniels*, 474 U.S. at 328. To the extent

that Carter's claim is that USP Lewisburg staff intentionally lost or destroyed his property, the relevant inquiry is whether an adequate post-deprivation remedy was available to Carter to address the loss of his property.

The Court finds that Carter had adequate post-deprivation remedies available to him through the BOP administrative remedy process. The BOP Administrative Remedy Program allows inmates to seek formal review of an issue relating to any aspect of his or her confinement. *See* 28 C.F.R. §§ 542.10 through 542.19. The BOP also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property. *See* 28 C.F.R. §§ 543.30 through 543.32. Carter does not allege that these procedures were not available to him. To the contrary, the allegations in his Complaint and the attachments thereto reveal that he availed himself both of the BOP Administrative Remedy Program and the BOP's administrative tort claims procedure. Because Carter had adequate post-deprivation remedies available to him, he fails to state a due process claim upon which relief may be granted, and his *Bivens* claims must be dismissed.

In dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 114. In this

case, any due process claim, whether based upon negligent or intentional conduct, would fail to state a claim upon which relief may be granted because Carter had an adequate post-deprivation remedy. Accordingly, amendment would be futile, and dismissal of Carter's *Bivens* claims will be with prejudice.

### B. FTCA Claims

The Federal Tort claims Act confers subject matter jurisdiction on district courts over negligence actions against the United States. It provides, in relevant part, as follows:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, the FTCA exempts from this waiver certain claims, including "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise *or any other law enforcement officer.*" 28 U.S.C. § 2680(c) (emphasis added). Because Carter asserts his claims against BOP officers employed at USP Lewisburg, his FTCA claims must be dismissed for lack of subject

matter jurisdiction.[7] *See Gibson v. Sadowski*, 308 Fed. Appx. 580, 581-82 (3d Cir. 2009) (citing *Alli v. Fed. Bureau of Prisons*, - - U.S. - -, 128 S. Ct. 831, 840-41 (2008) (holding BOP officers who allegedly lost inmate's personal property during his transfer were "law enforcement officers" as that term is used in § 2680(c) )).

### III. CONCLUSION

For the foregoing reasons, Carter's *Bivens* claims will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and his FTCA claims will be dismissed for lack of subject matter jurisdiction. The Clerk of Court will be directed to close this case. An appropriate Order shall issue.

---

[7] Even if this Court had subject matter jurisdiction over Carter's FTCA claims, it appears that the administrative tort claim he submitted to the BOP did not relate to his loss of his walkman, headphones, and address book, but rather to his loss of a sweatshirt, earplugs, a towel, and gloves. (*See* Doc. 2 at 2). Accordingly, he could not raise his FTCA claims relating to his loss of his walkman, headphones, and address book for the first time in this action. *See* 28 U.S.C. § 2675(a) (requiring claimant to present tort claims to appropriate Federal agency before filing lawsuit raising those claims).